UNITED STATES DISTRICT COURT
FOR DISTRICT OF COLUMBIA

MAN AGAINsT XTINCTION A/K/A M.A.X.        )
                                          )
                    *Citizen Attorney General*

v.

MICHAEL PENTONY, as an individual

BENJAMAN FRIEDMAN, in his official capacity as the   )
administrator of the NATIONAL OCEANIC AND            )
ATMOSPHERIC ADMINISTRATION ("NOAA")                 )
                                                     )
PAUL DOREMUS in his official capacity as the assistant  )
administrator of the NATIONAL MARINE  FISHERIES        )
FISHERIES  ("NMFS")                                   )
                                                     )
                    *Defendants*                      )

Case: 1:21-cv-01131  JURY DEMAND
Assigned To : Unassigned
Assign. Date : 4/23/2021
Description: TRO (D-DECK)

RECEIVED
Mail Room

APR 2 3 2021

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

---

VERIFIED PETITION FOR DECLARATORY & INJUNCTIVE RELIEF
& REQUEST FOR A JURY TRIAL

---

I, Richard Maximus Strahan serving as Citizen Attorney General  Man Against Xtinction,
hereby SPEAKS:

1.      Man Against Xtinction ("MAX") is prosecuting in the name of the People of the
United States the Defendants – employees of the National Oceanographic and Atmospheric
Agency ("NOAA") and its infra-agency the National Marine Fisheries Service ("NMFS") -- who
are acting in concert to engage in conduct prohibited by both the Endangered Species Act and the
Marine Mammal Act. **FN1** Citizen Attorney General M. A. X. is prosecuting the Defendants to

---

[1] M. A. X. is authorized by 16 USC 1540(g) to prosecute in the name of the People of the United
States violators of the ESA Section 9 prohibitions in order to obtain a court order enjoining any
said prohibited conduct in the future. The ESA authorizes citizens to act as a "Citizen Attorney
Generals" to defend the Public Interest in order to stop any ongoing ESA prohibited destruction
of a member of any ESA Listed Species. Additionally, Congress in adopting the ESA grants to
any Citizen Attorney General the necessary Article III standing to bring a prosecution of ESA
offenders to any US District Court.

stop their further ESA/MMPA prohibited killing and injuring of Endangered Whales and Sea Turtles along the northeast US coastline. **FN2** These Defendants are usurping their authority as federal employees in order to protect federal and state licensed fishing activity from any adverse impact on Fishing Activity from its being required to comply with the ESA/MMPA prohibitions against the killing and injuring of ESA Listed Species of whales and sea turtles. In particular, the Defendants as employees of NOAA/NMFS are requiring state and federally licensed lobsterpot and gillnet fishing activities ("Fishing Activity") must use vertical buoy ropes ("VBR"). Often each year since 1973, VBR deployed by Fishing Activity routinely entangles members of ESA Listed Species of whales and sea turtles. As a result of this coercion, the Defendants personally and NMFS/NOAA are directly liable for any ESA/MMPA prohibited "taking" of ESA Listed Species of endangered whales and sea turtles in US coastal waters by federal and state licensed marine Fishing Activity required by them to use VBR. **FN3**

2.      Many times every year since 1973, ESA Listed Species of whales and sea turtles are routinely entangled by VBR off the US northeast coastline.  As result of these numerous entanglements by VBR, members of these endangered species are routinely injured and killed from being so entangled. Due to the Defendants said prohibited killing of the Right Whales, these whales have now the irreparably lost the ability to annually give birth to a sufficient number of newborn whales to continue the survival of their species. The Right Whale will be extinct in the near future.  Owing to the irreparable decline of the remaining population of Northern Right Whales since 1997 caused by the Defendants crimes of both omission and commission against the People of the United States, the Northern Right Whales species extinction before 2100 AD is now  inevitable.

3.      M. A. X. is also seeking to obtain in the instant action injunctive relief to legally protect himself from engaging in ESA Section 9 prohibited conduct that will kill and injure members of endangered species of whales and sea turtles. M. A. X. engages in lobsterpot fishing under license by both New Hampshire and Massachusetts. "Green Fisherman" seeking protection

---

[2] M. A. X. is a licensed commercial lobster fisherman, an avid whale watcher, a conservation scientist who researches whales and marine wildlife and a professional recovery agent of endangered wildlife species, who is paid by his clients to recover endangered species population to a non-endangered legal status.

[3] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996),

of his and other so situated members of the Public's equal rights under law to have the
opportunity to engage in commercial lobster fishing in state and federal waters in a manner that
is Whale Safe and will not violate federal and state wildlife laws. **FN4** He does not want or
need to use VBR in his lobsterpot gear in order to sustainably obtain lobsters to sell. He also
believes his Green Fishing operation should be prioritized to favor the conservation of marine
wildlife over any profit making. The Plaintiff is fully cooperative with government agencies,
academics, and conservationists to promote scientific management of marine fisheries. He will
utilize his fishing operations to conduct research on the environment, to collect field data
beneficial to sustainable management, and to report the location of each of his trawls and pots at
all times in order to aid the sustainable management of commercial marine fishing.

3.      The Defendants are operating an unlawful Fishing Activity only seeks to only
benefit the profiteering of a small number of specific individuals. They deny any opportunity to
access a fishing permit to over 99% of the Public. They refuse to allow the entire Public any
equal or competitive opportunity to participate in lobster/crab pot or gill netting in US coastal
waters. The Defendants regulate marine fisheries only to assist a few selected individuals they
personally favor with fishing permits at the cost of the widespread destruction of marine wildlife.
The Defendants marine fisheries operations only serve the Public Bad. Despite lobsterpot fishing
being only a revocable privilege under federal statute — with no one possessing any property
right to even obtain a renewed fishing permit —the Defendants restrict access to commercial
fishing licenses to a small number of historically, culturally favored individuals. Defendants
licensure of lobsterpot fishermen is discriminatory. It only favors individuals acceptedly related
to the selected individuals seeking to profit off the unsustainable destruction of marine wildlife.
As such, federal marine fisheries statutes are facially and as applied violative of the Constitution.

4.      M. A. X. is seeking injunctive relief to do three things. FIRST, Defendant NOAA
will no longer be allowed to delegate its supervisory role in administering the Endangered

---

[4] As a "Green Fisherman" the M. A. X. does not want to injure other species of marine wildlife
when he attempts to sustainably harvest lobsters. He seeks to conduct his commercial fishing
operations to be Whale Safe. The State Defendants have adopted regulations requiring the use of
Vertical Buoy Ropes (VBR) or Killing Ropes in lobster/pot and gill net commercial fishing
licensed by them. The State Defendant are threatening the Plaintiff with fines and loss of his right
to fish if he does not use Killing Ropes that will cause him to "take" endangered marine wildlife
in violation of the ESA's Section 9 prohibitions against such.

Species Act & Marine Mammal Protection Act to Defendant NMFS which possesses a vested interest in protecting the commercial fishing industry over the conservation needs of Endangered Whales and Sea Turtles. M. A. X. claims that the mandatory and non-discretionary duties imposed on NOAA by the ESA to recover Endangered Whales and Sea Turtles compels it to replace NMFS with one of its other infra-agencies like the National Ocean Service ("NOS"). NOS is wholly dedicated to Ocean conservation with no conflicting duties or interests in supporting commercial interests.   SECOND, NMFS will no longer be allowed to license any FISHING ACTIVITY that requires the licensed fishermen to use vertical buoy ropes. THIRD, NMFS will not be allowed to license FISHING ACTIVITY until it has applied for and received from NOAA the requisite incidental take permit under Section 101(a)(5)(E) of the MMPA that authorizes the incidental taking of ESA Listed Species of whales in United States coastal waters off the northeastern Atlantic coast. **FN5**

5.      M. A. X. is claiming that the Defendants current Fishing Activity in said US coastal waters is in violation of the ESA's Section 9 prohibitions against the "taking" of ESA listed species of whales and sea turtles. **FN6** The Defendants requiring Fishing Activity that requires the use of VBR in lobster pot gear and gill nets constitutes prohibited conduct under the ESA's Section 9 prohibitions against "taking" ESA listed species of whales and sea turtles. **FN7** In 1997 the 1st Circuit Court of Appeals upheld a district court decision finding that government agencies are liable for violation of the ESA Section 9 take prohibitions that occur in the activities that they license and regulate.  **FN8**

---

[5] ESA Section 10 at 16 USC § 1539.

[6] 16 USC § 1538(a and g). Section 9 of the Endangered Species Act "prohibits" the incidental killing and/or injuring of any species listed as endangered under the Act: ESA: "It is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas."

[7] See 16 USC §§ 1801 *et seq*., Magnuson-Stevens Fishery Conservation and Management Act.

[8] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and affirmed by 127 F. 3d 155 (1st Circuit, 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency).

6.      ESA listed species of endangered whales include the Northern Right Whales and other ESA listed endangered species of whales ("Endangered Whales"). **FN9** ESA listed species of turtles includes Green Turtles and other endangered sea turtle species ("Sea Turtles"). **FN10** The Defendants are killing and/or injuring Endangered Whales and Sea Turtles intentionally pursuant to their Fishing Activity in waters within the United Sates ECZ off its northeast Atlantic coastline.  In 2021, the Defendants Fishing Activity *per se* constitutes ESA Section 9 prohibited taking of ESA Listed Species of whales and sea turtles.

7.      Since 1973, Endangered Whales and Sea Turtles have been entangled by Pot Gear and Gill Nets deployed under license and regulation by the Defendants into the coastal marine wilderness inhabited by these ESA listed species. The principal feature of Pot Gear that is entangling these ESA listed species is the vertical buoy rope ("VBR") that is attached to the pots deployed on the seafloor and rises vertically to attach to marker buoys floating on the sea surface ("Vertical Buoy Rope" or "VBR").  For Gill Nets, Endangered Whales and Endangered Sea Turtles are entangled by both VBR and the netting it is used to hold vertically in the water column.

8.      The Defendants' Fishing Activity is a clear and present danger to entangle, kill and injure ESA Listed Species in 2021. The Defendants have every year since 1973 killed and injured numerous Right Whales and other endangered species of whales and of turtles listed as protected under the Endangered Species Act in the ECZ along the US northeast Atlantic coastline. They have done so through their licensing and regulating  Lobster Pot and Gill Net fishing by requiring the use of VBR by their Fishing Activity. The Defendants are well aware that they are directly responsible the majority of the injuries and deaths inflicted on ESA Listed Species of marine wildlife in the United States. L

---

[9] The Endangered Whales includes: (1) The Sei Whale, *Balaenoptera borealis*; (2) The Northern Right Whale, *Eubalaena glacialis*: (3) The Humpback Whale *Megaptera novaeangliae*; (4) The Fin Whale *Balaenoptera physalus*: and (5) The Blue Whale, *Balaenoptera musculus*.

[10] The Endangered Sea Turtles include: (1) The Green turtle, *Chelonia mydas*,; (2) Loggerhead turtle, *Caretta caretta*,; (3) The Olive Ridley turtle, *Lepidochelys olivacea*; (4) The Hawksbill turtle, *Eretmochelys imbricate*; (5) The Kemp's Ridley turtkle, *Lepidochelys kempii*; and (6) The Leatherback turtle, *Dermochelys coriacea*.

9.      The Defendants refuse to enforce ESA's Section 9 take prohibitions against any individual licensed by them to participate in their Fishing Activity . Upon information and belief, the Defendants have NEVER taken an enforcement action state or federally licensed individual for entangling a member of  ESA Listed Species in their fishing gear. As long as the whale or sea turtle was entangled by the fishing gear complaint with current fishing regulation, the Defendants is guaranteed to take no enforcement action against anyone whose gear entangles and kills a member of an ESA Listed Species of whale or sea turtle.

10.      The Defendant Friedman/NOAA is also violating the non-discretionary and mandatory duties imposed on them under Section 7 of the ESA. Defendant NOAA after it was established by Congress immediately delegated to it supervisory duties under the ESA/MMPA to Defendant NMFS without complying with the mandatory consultation and  review requirments imposed on it by ESA Section 7. NOAA is required by ESA Section 7 to conduct an internal consultation to decide what was either the best existing infra-agency or what infra-agency it should create to insure the conservation and recovery of Endangered Whales and Sea Turtles. Instead NOAA considers  all species of marine wildlife categorically to be  "fish" and a commercially harvestable resource. So NMFS was chosen as appropriate to protect endangered marine wildlife only for the benefit of commercial exploitation.

11.      Defendant  NOAA insures the extinction of the Right Whale by the above single failing in its ESA mandated duties by handing over Endangered Whales and Sea Turtles to NMFS in order to insure that the ESA/MMPA will not be enforced adversely to the Fishing Activity. Since 1973, NMFS has proven itself to be "the fox guarding the chicken coop" in regards to not fulfilling its duties under the ESA. It has only deliberately protected commercial fishing from the enforcement of ESA Section 9 prohibitions. It demonstrably continues this unlawful practice to the current day. It will be the joy of the M. A. X. to scientifically prove this to the Court during the course of these proceedings.

11.      Defendant NMFS is also violating the ESA by using the Marine Mammal Protection Act unlawfully to "manage" entanglements of ESA Listed Species of whales . Under the MMPA all entanglements of non-endagered marine mammals are lawful. NMFS only then issues regulations to curb entanglements by specifying acceptable fishing gear and practices. Then fishermen are only required to comply with these fishery regulations and can still entangle endangered whales without consequence. But the MMPA does not allow this practice for

endangered species unless NMFS certifies first it will not hurt the ongoing increase in the Right Whales population, a required act NMFS has never done in violation of the MMPA also.

12.     M. A. X. is now the object of a vendetta being conducted by disgruntled employees of the Defendants including Defendant Pentony who are doing so by usurping their authority as NOAA employees. Defendant Pentony in 2019 personally ordered all NMFS employees under his supervision to not communicate in any manner directly with the Plaintiff ("Gag Order"). The instant action is bringing a *Bivens* claim against Pentony of violating the Constitutionally protected right of the Plaintiff to engage in political activity to influence government policy and to petition the Court. **FN11**

### Requested Relief Against the Defendants

13.     M. A. X.  is seeking a Permanent Injunction against the Defendants —

a.     Enjoining the Defendants from requiring the further use of Vertical Buoy Ropes in its Fishing Activity.

b.     Enjoining the Defendants from further licensing the use of fixed Gill Nets off the US northeast coastline.

c.     Order that the Defendants to enforce the ESA Section 9 take prohibitions against coastal state marine fishing agencies that license lobsterpot and gillnet fishing in US coastal waters. In doing so NOAA must authorize said state fisheries pursuant to the ESA's Section 10 requirements before it allows these states continue their lobsterpot and gillnet fisheries in US coastal waters that routinely entangle ESA Listed Species of whales and sea turtles.

d.     Enjoin NMFS' from any further delegated supervision for NOAA  of the enforcement of the ESA/MMPA.

e.     Order the Defendant NOAA to do the requisite ESA Section 7 review of any further delegation of its ESA/MMPA supervisory authority to any of its infra-agencies.

14.     M. A. X. is seeking a jury trial on his request for a declaratory judgment against the Defendants and for compensatory and punitive damages against Defendant Pentony. He is also seeking an award against the Defendants of his costs of litigation in the instant action.

---

[11] See *Bivens v. Six Unknown Federal Agents*, 403 US 388, 91 SCT 1999 (1971)

## The Parties

15.      Citizen Attorney General Richard Maximus Strahan as Man Againt Xtinction recently graduated *magnum cum laude* with a Bachelor of Arts degree in Classics Studies from the University of Massachusetts in Boston MA. In 2020, M. A. X. was awarded a Master of Arts degree by the University of New Hampshire in Durham, NH. He is a licensed commercial lobsterpot fisherman in New Hampshire and is a licensed recreation fisherman in Massachusetts. He volunteers as the Chief Science Officer of Whale Safe USA, a campaign to make the US coastline environmentally safe for endangered species of coastal whales and sea turtles. Strahan is a conservation scientist whose profession activities include designing and implementing conservation programs that protect Endangered Species of Whales and Sea Turtles in order to stop their extinction and to provide for their recovery from their endangered species status. He is an avid whale watcher. He observes and collects field data on Endangered Whales and Sea Turtles off the US northeast Atlantic coastline. Every major conservation effort for Endangered Whales in US coastal waters has originated and designed by him. This includes imposing 500 yard protection zones around the Northern Right Whale and the designation of protected critical habitat for it. Strahan is a licensed commercial lobster pot fishermen in New Hampshire. His mailing address is 83 Main Street, 6080 Granite Street Station, Durham NH 03824.

16.      Defendant Benjamin Friedman is being sued in his official capacity as the appointed Administrator of the National Oceanic and Atmospheric Administration. Its official business address is 1401 Constitution Avenue NW, Room 5128, Washington, DC 20230.

17.      Defendant Paul Doremus is being sued in his official capacity as the appointed Assistant Administrator of the National Marine Fisheries Service. Its official business address is % Office of the Assistant Administrator, National Marine Fisheries Service, 1315 East-West Highway, Silver Spring MD 20910.

18.      Defendant Michael Pentony is being sued as an individual for his personally acting outside his employee duties as a government employee in order to violate the constitutionally

protected rights of M. A. X. His business address is % Greater Atlantic Region Fisheries Office, NMFS, 55 Great Republic Drive, Gloucester MA 01830.

## Jurisdiction and Standing

19.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) under the ESA, APA, 5 U.S.C. § 701 et seq. (APA), 28 U.S.C. § 1361 (mandamus) and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. § 2202 (declaratory and injunctive relief). An actual, justiciable controversy now exists between Plaintiff and Defendants, and the requested relief is proper under 28 U.S.C. §§ 2201-2202, 5 U.S.C. §§ 701–706, and 16 U.S.C. § 1540(g). Pursuant to 16 U.S.C. § 1540(g), Plaintiff on or about 4 June 2018 served a notice on each of the Defendants and the Secretary of Commerce pursuant to 16 USC § 1540(g) more than 60 days prior to his commencing the instant action ("ESA Notice"). In his ESA Notice Strahan notified the Defendants that he was going to commence a civil action against the Defendants for their said violations of the ESA. [12]

20.    Venue in this judicial district is proper under 28 U.S.C. § 1391(e) because this is an action against an agency of the United States and officers of the United States acting in their official capacity. Additionally at least one plaintiff resides in this district.

21.    M. A. X. as Richard Maximus Strahan has been granted Article III by Congress pursuant to 16 USC 1540(g) in order to prosecute the Defendants to stop they're entangling, injuring and killings of ESA Listed Species of whales and sea turtles which is prohibited by the ESA's Section 9 take prohibitions. Otherwise he has Article III standing tio serve as a Citizen Attorney General standing pursuant to his professional involvement and recreational observational activities of Endangered Whales and Sea Turtles off the US northeast Atlantic coastline.

---

[12] Strahan "confirmed" the proper service of his ESA Notice on the Defendants by his filing a copy of his ESA Notice in a prior action against these Defendants in the US District Court for the District of Massachusetts. See *Strahan v. Administrator NOAA, et al.*, 18-CV-10392-DJC (D. Mass 2018). At no point henceforth has the Defendants claimed that they did not receive Strahan's ESA Notice. The Defendants were eventually dismissed without prejudice pursuant to FRCP Rule 41(a) from the Massachusetts lawsuit.

22.     The Plaintiff has Article III standing because he is personally experiencing irreparable and monetary injury by the Defendants to their adverse impact on his following personal and professional interests —

   a.    His "whale watching" of Endangered Whales and Sea Turtle on Jeffrey's Ledge, Stellwagen Bank National Marine Sanctuary, Cape Cod Bay, Narragansett Bay, and along the New York/New Jersey State coastlines. **FN13**

   b.    His scientific research and data collection on Endangered Whales and Sea Turtles.

   c.    His professional services to protect and recover endangered populations of Whales and Sea Turtles which involves his being paid by his clients to recover said endangered populations of marine wildlife.

   d.    His being a commercial "Green Fishermen" who advertises that his commercial fishing activities are "whale safe" to prospective customers. He needs to have Endangered Whales and Sea Turtles recover so his own commercial lobsterpot fishing will be regarded as "whale safe" by his customers and not threaten Endangered Whales and Sea Turtles with the threat of extinction.

   e.    The Plaintiff has Article III standing to protect his profession interests in his commercial fishing activities from violating the ESA Section 9 taking of Endangered Whales and Sea Turtles. **FN14**

### The Regulatory Scheme for the Protection of Endangered Species

23.     In enacting the ESA, Congress recognized that certain species "have been so depleted in numbers that they are in danger of or threatened with extinction" and that these species are "of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a) (2) and (3). The ESA protects imperiled species by listing them as "endangered" or "threatened." A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future

---

[13] *Japan Whaling Association v. American Cetacean Society*, 478 U.S. 221, 230 n.4 (1986) (plaintiffs "whale watching" activities establishes Article III standing to seek enforcement of conservation laws).

[14] *Bennett v. Spear*, 520 US 154 (1997) (Rancher has Article III standing to protect his commercial interests from enforcement of ESA).

throughout all or a significant portion of its range." Id. § 1532(20). The Secretary of Commerce is charged with administering and enforcing the ESA for most marine species, including North Atlantic right whales, and has delegated this responsibility to NMFS. 50 C.F.R. § 402.01(b).

24.     The ESA seeks "to provide a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] to provide a program for the conservation of such . . . species." 16 U.S.C. § 1531(b). The ESA defines conservation as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." Id. § 1532(3). Accordingly, the ultimate goal of the ESA is not only to prevent listed species from going extinct, but also to recover these species to the point where they no longer require ESA protection

25.     To accomplish these goals, Section 9 of the ESA generally makes it unlawful for "any person" to "take" an endangered species. Id. § 1538(a)(1). A "person" includes private parties as well as local, state, and federal agencies. Id. § 1532(13). "Take" is defined broadly under the ESA to include harassing, harming, wounding, killing, or capturing a protected species (or attempting to engage in such conduct), either directly or by degrading its habitat enough to impair essential behavior patterns. Id. § 1532(19); 50 C.F.R. § 222.102. The ESA prohibits the acts of parties directly causing a take as well as the acts of third parties, such as governmental agencies, whose acts cause such taking to occur. 16 U.S.C. § 1538(g).  Additionally, Section 7(a)(2) of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any" endangered or threatened species. Id. § 1536(a)(2).

26.     To comply with Section 7(a)(2)'s substantive mandate, federal agencies must consult with NMFS when their actions "may affect" a listed marine species. 16 U.S.C. § 1536(a)(2). NMFS and the action agency must utilize the "best scientific and commercial data available" during the consultation process. Id.; 50 C.F.R. § 402.14(a).

27.     Where, as here, NMFS is the action agency as well as the expert consulting agency, NMFS must undertake intra-agency consultation. At the completion of consultation, the consulting branch of NMFS issues a biological opinion that describes the expected impact of the agency action on listed species. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14. The biological opinion must include a summary of the information upon which the opinion is based, an evaluation of

"the current status of the listed species," the "effects of the action," and the "cumulative effects." 50 C.F.R. § 402.14(g)(2), (g)(3). "Effects of the action" include both direct and indirect effects of an action "that will be added to the environmental baseline." Id. § 402.02. The "environmental baseline" includes "the past and present impacts of all Federal, State or private actions and other human activities in the action area, the anticipated impacts of all proposed Federal projects in the action area that have already undergone formal or early section 7 consultation, and the impact of State or private actions which are contemporaneous with the consultation in process." Id. "Cumulative effects" include "future State or private activities, not involving Federal activities, that are reasonably certain to occur within the action area." Id.

28.     Thus, in issuing a biological opinion, NMFS must consider not just the isolated share of responsibility for impacts to the species traceable to the activity that is the subject of the biological opinion, but also the effects of that action when added to all other activities and influences that affect the status of that species. After NMFS has added the direct and indirect effects of the action to the environmental baseline and cumulative effects, it must make its determination of "whether the action is likely to jeopardize the continued existence of a listed species." 16 U.S.C. § 1536(b)(3), (b)(4); 50 C.F.R. § 402.14(h). A likelihood of jeopardy is found when "an action [] reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. Recovery is defined as "improvement in the status of listed species to the point at which listing is no longer appropriate." Id.  A biological opinion that concludes that the agency action is not likely to jeopardize the continued existence of a listed species but will result in take incidental to the agency action must include an incidental take statement. 16 U.S.C. § 1536(b)(4).

29.     The incidental take statement must specify the amount or extent of incidental taking on such listed species, "reasonable and prudent measures" that NMFS considers necessary or appropriate to minimize such impact, and set forth "terms and conditions" that must be complied with by the action agency to implement the reasonable and prudent measures. Id.; 50 C.F.R. § 402.14(i). Additionally, when the listed species to be incidentally taken are marine mammals, the take must first be authorized by NMFS pursuant to the MMPA, and the incidental take statement must include any additional measures necessary to comply with the MMPA take authorization. The take of a listed species in compliance with the terms of a valid incidental take

statement is not prohibited under Section 9 of the ESA. 16 U.S.C. § 1536(b)(4), (o)(2); 50 C.F.R. § 402.14(i)(5). If NMFS determines in its biological opinion that the action is likely to jeopardize the continued existence of a listed species, the biological opinion must include "reasonable and prudent alternatives" to the action that will avoid jeopardy. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).

30.     Regardless of the conclusion reached in the biological opinion, the agency undertaking the federal action has an independent duty to ensure that its actions are not likely to jeopardize the continued existence of listed species. 16 U.S.C. § 1536(a)(2). An agency's reliance on a legally flawed biological opinion to authorize an action does not satisfy its substantive duty to ensure against jeopardy.

28.     Moreover, the ESA's implementing regulations further require an agency to reinitiate Section 7 consultation when: (a) the amount of take specified in the incidental take statement is exceeded; (b) new information reveals that the action may have effects not previously considered; (c) the action is modified in a way that was not previously considered; or (d) a new species is listed or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16. The ESA specifies that Section 7 consultation must typically be completed within ninety days after initiation. 16 U.S.C. § 1536(b)(1); 50 C.F.R. § 402.14(e). The substantive duty to ensure against jeopardy of listed species remains in effect regardless of the status of the consultation.

### The Administrative Procedure Act

31.     The APA governs judicial review of federal agency actions. 5 U.S.C. §§ 701–706. Under the APA, courts "shall . . . hold unlawful and set aside agency action, findings, or conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or made "without observance of procedure required by law." Id. § 706(2)(A), (C), (D).

### Background on Endangered Species of Whales and Sea Turtles
### Adversely Affected by Commercial Fishing

32.     The Northern Right Whale is the world's most critically endangered large whale species and also one of the world's most endangered mammals. Northern Right Whale's essential marine habitat is within the 200 mile ECZ of mostly the US but extends northwards into Canada. They live in the "urban sea" of the United States. Their coastal marine habitat is no

longer marine wilderness from having so hugely been adversely impact from commercial development of area within 100 miles inland of the US coast that spills outward to the Ocean.

33.     The Northern Right Whale living along the US coastline is more akin to a moose trying to live in a suburb of an eastern city like Boston or Concord NH. Not a good situation. Right whales migrate annually from their summer feeding grounds off the Northeast coast of the United States to their winter breeding grounds off the Southeast coast.

34.     Females typically reach sexually majority at age nine or ten and give birth to a single calf. The gestation period lasts roughly one year. From 2005 to 2014, the average right whale calving interval (i.e. the amount of time between the birth of a right whale calf and a subsequent calf from the same mother) ranged from three to five years. The average right whale calving interval has increased every year since 2014, to a high of 10 years in 2017.  Right whales have raised patches of roughened skin on their heads, known as callosities. These callosities are found only on right whales and, like human fingerprints, have distinctive patterns that enable scientists to individually identify right whales. The callosities are covered by barnacles and tiny crustaceans known as whale lice.

35.     NMFS amended the Atlantic Large Whale Take Reduction Plan in 2015, but did so to exempt certain waters from the requirements of the 2014 rule. 80 Fed. Reg. 30,367 (May 28, 2015). make the callosities appear white or pale yellow and thus visible from boats or during aerial surveys. Scientists maintain an extensive catalogue that documents each of the North Atlantic right whales known to exist.  Although the Northern right whale has been protected under the ESA since 1973, the species has not recovered to a sustainable population level. Scientists estimate that the species consisted of only about 411 individuals as of 2019. Not a single new born Northern Right whale calf was sighted by dedicated survey efforts during the 2017-2018 calving season. NMFS has previously admitted that the species' survival is dependent on protecting every individual, concluding that the loss of even one whale may contribute to the extinction of the species.  Entanglement in commercial fishing gear and ship strikes are the two most significant documented sources of mortality and serious injury for Northern Right Whales. Since 1973 Defendants NOAA/NMFS have failed to meaningfully manage commercial fishing and vessel operations off the US eastern coastline in order to significantly reduce the unlawful taking of Endangered Whales and Sea Turtles by commercial fishing and vessel operations.

36.     To reduce the threat of ship strikes, NMFS issued regulations in 2008 as a result of the Plaintiff's petition and then in 2013 requiring ships 65 feet in length and longer to slow to ten knots or less in Northern Right whale habitat areas at certain times of year. 73 Fed. Reg. 60,173 (Oct. 10, 2008); 78 Fed. Reg. 73,726 (Dec. 9, 2013). The rule has not reduced right whale mortalities from ship strikes. Entanglement in fishing gear has been the primary cause of death and serious injuries to Endangered Whales and Sea Turtles in recent years. NMFS has acted arbitrarily and capriciously in refusing to enforce ESA Section 9 prohibitions against individual commercial fishermen or otherwise regulate commercial fishing operation to minimize their causing the entanglement and otherwise unlawful taking of Endangered Whales and Sea Turtles.

37.     When Northern Right whales and other Endangered Whale s get tangled up in fishing gear, they can drown immediately. In a significant number of cases, however, the animals die over an extended time period as they become incapacitated by injuries or infections caused by the entanglement or starve. Gear often wraps around whales' flippers, mouths, and tails and, particularly in growing animals, cinches tighter over time. Such injury often results in major tissue and bone damage and systemic infection. The animals often lose weight, causing them to sink when dead so that death from entanglement is often underreported.  From 2010 to 2014, there were 24 records of serious injuries and mortalities of right whales that involved entanglement or fishery interactions – an average of 4.65 whales per year.

39.     There is a clear historical record of Right Whales being entangled in the VBR of lobsterpot gear licensed and regulated by the Defendants. In 2015, there were at least 4 new confirmed entanglements of right whales in fishing gear; in 2016 there were at least 7 new confirmed right whale entanglements; and in 2017, there were at least 9 new confirmed right whale entanglements.  From 2010 to 2016, entanglement related deaths accounted for 85% of diagnosed right whale mortalities.  In its 2016 stock assessment report, NMFS established an annual right whale PBR of 1. In other words, NMFS has determined that only a single right whale may be killed as a result of human activity while still allowing the species to reach its optimum sustainable population under the Marine Mammal; Protection Act. 16 U.S.C. § 1362(20). Therefore, current documented serious injuries and mortalities are unsustainable and vastly exceed the standards of the MMPA.

40.     Most right whale entanglements and mortalities are undocumented. Documented serious injury and mortality rates may vastly underrepresent actual mortality. Scarring data may

better reflect actual entanglement rates. For example, a study of scarification data estimated that between 1980 and 2009, nearly 83% of known right whales suffered entanglements and 59% of right whales have been entangled more than once. A recent follow-up study indicates that the pattern persisted through at least 2012, and there is no evidence to suggest this threat has been mitigated.  In addition to causing serious injuries and mortalities, entanglement in fishing gear causes other significant harm to Endangered Whales and Sea Turtles. . For example, research indicates that survivorship probability for individual Northern Right whales is reduced by at least 40% after an entanglement event.

41.     Chronic entanglement impairs foraging and locomotion. Impaired locomotion can contribute to starvation, while an entanglement of the mouth directly impedes foraging, causing starvation. One entangled North Atlantic right whale gradually starved to death over the course of 320 days owing solely to his impairment of feeding and infection of wounds caused directly by entanglement. An entanglement can also increase stress hormone levels, which can contribute to the development of systematic infections. Severe wounding from an entanglement or repeated entanglements of right whales can increase their susceptibility to disease.

42.     Entanglements are reducing the reproductive success of right whales, inhibiting the species' ability to recover from the brink of extinction. Studies show that severe wounding and repeated entanglements of right whales can cause reduced reproduction. Studies have also found that female right whales seen alive and carrying gear or with severe wounds from entanglement had a significantly lower chance of calving again. Females that experienced moderate or severe entanglement wounds between calving events had a significantly longer calving interval than females that experienced minor or no entanglement wounds. Other studies have found that significant energetic impacts also occur from entanglements, especially in reproductive females. The drag from fishing gear can delay right whale reproduction by months or years.

43.     The myriad negative impacts from entanglements are contributing to the dire status of the right whale population. Just since 2010, calving rates have dropped by nearly 40%, and the last four decades have seen increasing numbers of right whales killed, primarily by entanglement in fishing gear. The right whale population is now in decline.

44.     The declining population trend was evident even before the spring and summer of 2017, during which at least 17 Northern Right whales were found dead in the United States and

Canada. Twelve whales were found dead in Canadian waters, and five were found dead in U.S. waters. The cause of death is still being investigated for many of these deaths, but necropsies show that at least two of the whales found dead in Canadian waters appear to have died from entanglement in fishing gear. Two of the whales found dead in U.S. waters show evidence of entanglement. Some of the whales were too decomposed to determine cause of death.

45.     These recent mortalities, which amount to nearly 10% of the current right whale population, will compound negative impacts to right whales, especially considering that at least four of the dead whales have been identified as females and only five calves were born in 2017. Conservation scientists assign a high probability that Northern Right whales owing to their reduced viability cause just by the Defendants said commercial fishing activities that ESA Section 9 prohibits will become biologically incapable of survival as a species by the second half of this century. If the Court fails to order the Defendants to stop their ongoing said prohibited killing and injuring of Northern Right whales, they will soon be extinct even after being fully protected under law by the ESA.

46.     All Endangered Whales and Sea Turtles become routinely become entangled in the VBR of Pot Gear and Gill Nets licensed and regulated by the Government Defendants. These Endangered Whales and Sea Turtles are then killed and injured as a result. In recent years the incidents of entanglements have increased for Endangered Whales and Sea Turtles. This is because there has been an explosion in the population of Amerikan Lobsters off the US northeastern coast coincident with an increase in the consumer market for lobster. Now more commercial fishermen are deploying more commercial fishing gear due to the greater market demand and the larger lobster population that can meet this demand.

47.     It is important to note that there are more lobsters because their main predator — the Cod fish — was recently wiped out by overfishing authorized and encouraged by Defendant NMFS. Despite its constantly decreasing population over many years, NOAA/NMFS refused to list the Codfish under the ESA as an endangered/threatened species and still refuses to do so to the current day. Their failure is a systemic error owing to their singular loyalty to the commercial fishing industry and not to the Public interest or to the rule of law. If the NOAA/NMFS are not ordered to do otherwise, they will continue to ignore the entanglement of Endangered Whales and Sea Turtles by the Pot Gear and Gill Nets that they license and regulate till the Northern Right Whale goes extinct. It will be the first and not last species of whale or sea turtle to be

extirpated by the negligence and commercial loyalty of NOAA/NMFS — the "foxes guarding the chicken coop."

48.     Because of the extinction of Codfish off the US northeastern coast as a result of its being overfished, the Amerikan Lobster population greatly increased from it no longer being preyed upon by the Codfish. Once its predator was eliminated by overfishing the population of Amerikan lobsters was no longer restrained by predation. It must be noted as a lesson of history that it was the refusal of NOAA/NMFS to list the Codfish as an endangered species that resulted in its remaining population being totally depleted from overfishing leading to its extirpation in the US northeast coastal waters. Despite all the data collected by NMFS clearly showing that the Codfish population was decimated from overfishing and it was facing imminent extinction, NMFS refused to put any moratorium on its further commercial exploitation nor did it list the species as endangered under the ESA. To this day, NMFS' complete dedication to the commercial exploitation by commercial fishing makes it incapable of stopping its licensing the commercial fishing of Cod.

49.     All of the above should be a convincing example of why NOAA/NMFS must be ordered by the Court to obey the ESA if there is any possibility of stopping commercial fishing from causing the extinction of any of the Endangered Species of Whales and Sea Turtles.

### Plaintiff's Claims Against the Defendants

COUNT I:     *Defendants Violation of 16 USC § 1536(a)(1) and the APA: The Defendants NOAA/NMFS Failure to Comply with the Mandatory Duties Imposed on Them by ESA Section 7(a)(1) to Use Its Authorities Under Law to Insure the Continued Survival of ESA Listed Species of Endangered and Threatened Whales and Sea Turtles.* **FN15**

50.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 49.

51.     The Defendants Friedman/NOAA and Doremus/NMFS have completely refused and failed to adequately comply with their non-discretionary and mandatory duties under ESA Section 7(a) to develop and implement effective conservation plans to facilitate the recovery of Endangered Species of Whales and Sea Turtles from their endangered species status.  Instead their Fishing Activity is the leading known source for killing and injuring Right Whales as a result of its requiring the use of VBR in the fishing gear they and state agencies license and regulates. These unlawful takings of Endangered Whales and Sea turtles are not incidental takings. They are intentional takings pursuant to their commercial fishing and therefore fully prohibited without exception by ESA Section 9 prohibitions. Therefore, they cannot be allowed by MMPA Section 101(a)(5)(E).

52.     Defendant Friedman/NOAA is currently violating its said ESA Section 7(a)(1) mandatory and non-discretionary duties by transferring to NMFS its duties and responsibilities assigned it by Congress under the ESA in an arbitrary and capricious manner without any concern for the adverse impact on listed endangered species from it doing so. ESA Section 7 imposes a mandatory and non-discretionary duty on NOAA to review all its agency action for possible adverse impact on endangered wildlife ESPECIALLY the delegation to any infra-agency its ENTIRE oversight of its entire suite of responsibilities concerning the conservation of endangered wildlife. NMFS as an agency promoting the commercial harvesting of wildlife is categorically an arbitrary and capricious choice. It is not

---

[15] **ESA Section 7(a)(1)**: The Secretary [i. e. Secretaries of the Departments of Commerce and Agriculture] shall review other programs administered by him and utilize such programs in furtherance of the purposes of this Act. All other Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this Act by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 4 of this Act.

responsible or rational to assign the protection of Endangered Whales and Sea Turtles to NMFS as a known killer of Endangered Whales and Sea Turtles and a continuous violator of the ESA Section 9 prohibitions for its taking of Endangered Whales and Sea Turtles by the fishing gear it licenses and regulates.

53.     There was no legitimate need for Friedman/NOAA to assign its ESA oversight duties to any infra-agency. It could have simply overseen its ESA duties out of its executive office. Instead it acted without a scintilla of concern of the safety of Endangered Whales and Sea Turtles to hand them over to NMFS just because NMFS historically licensed and regulated the commercial harvesting of these very species. The fact that the Right Whale is now functionally extinct mostly from its being killed by NMFS commercial fishing operations is testament to agency stupidity in violation of the ESA Section 7 mandates.

54.     These said violations of the Defendants will continue to reoccur daily until the Court orders these Defendants to comply with their mandatory and non-discretionary duties under ESA Section 7(a)(1).

COUNT II:     *Defendant NMFS Violation of 16 USC § 1538(a and g): The Defendants Violation of the ESA Section 9(a) Prohibitions by Requiring VBR Use in State and Federal Fishing Activity FN16*

55.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 54.

56.     The Defendant NMFS is licensing and regulating commercial fishing operation off the northeast Atlantic coastline that is killing and injuring ESA Listed Species of whales and sea turtles since 1973. **FN17** The Defendants require that its Fishing Activity use vertical buoy

---

[16] ESA Section 9(a):[I]t is unlawful for any person subject to the jurisdiction of the United States to— (A) import any such species into, or export any such species from the United States; (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas; (D) possess, sell, deliver, carry, transport, or ship, by any means whatsoever, any such species taken in violation of subparagraphs (B) and (C); … or (G) violate any regulation pertaining to such species or to any threatened species of fish or wildlife listed pursuant to section 4 of this Act and promulgated by the Secretary pursuant to authority provided by this Act.

[17] Defendant NMFS established a northeast Atlantic coast regional office that manages NMFS fisheries operation in an area ranging from the Virginia coast north to the coast of Maine. The Plaintiff is claiming that the Court has jurisdiction to hear ESA claims throughout this range concerning ESA violations against NMFS northeast regional office's fisheries management actions. All Endangered Whales and Sea Turtles are migratory species along the northeast US

ropes attached to its pot and gillnet fishing gear. The said VBR routinely entangle Endangered Whales and Sea Turtles along the US coast line according to NOAA's own records concerning marine wildlife entangled by pot gear.   .

57.       The Defendants Agents are violating the ESA Sections 9 prohibitions by deploying lobster pot gear in US coastal waters that entangles Endangered Whales and Sea Turtles in a routine and continuous manner since 1973. The overwhelming majority of these entanglements are caused by VBR. The Defendants never issued any ESA Section 10 Incidental Take Permit to authorize their incidental taking by them of Endangered Whales and Sea Turtles in the commercial fishing gear that they license and regulate to be deployed in US coastal waters under the concurrent state jurisdiction of Massachusetts.

58.       Defendant NMFS have never issued itself the requisite MMPA Section 101(a)(5)(E) incidental take permit to authorize ist Fishing Activity to entangle RSA Listed Species of whales. These Defendants are violating the ESA Section 9(a) prohibitions in their incidental taking Endangered Species of Whales and Sea Turtles by their facilitating the operation of commercial fisheries that deploy Pot Gear and Gill Nets in US coastal waters. This deployment of said fishing gear continuously and routinely kills and/or injures members of Endangered Species of Whales and Sea Turtles from their entanglements in the said fishing gear.

59.       Endangered Species of Whales and Sea Turtles are killed and injured from entanglement in Pot Gear and Gill Nets deployed by NOAA/NMFS licensing and regulating these commercial fisheries. Federal courts have repeatedly held federal agencies liable for violating the ESA's Section prohibitions when their agency actions expectedly and routinely cause commercial development in ecosystems utilized by ESA listed species and that results in the unlawful taking of these species in violation of the ESA Section 9(a) prohibitions. **FN18**

---

coastline. So, as an example, a whale entangled by NMFS licensed lobsterpot fishery in Maine affects the quality of whale watching in Massachusetts on Stellwagen Bank since that whale migrates through the coastal waters of both states.

[18] See *Strahan v. Coxe*, 939 F. Supp. 963 (Dist. Mass. 1996) and 127 F. 3d 155 (1st Circuit, 1997) (Massachusetts marine fishing agency liable under ESA Section 9(a) for unlawful taking of ESA listed species of endangered whales by entanglements of endangered whales in fishing gear licensed and regulated this agency). See also *Florida Key Deer v. Paulison*, 522 F.3d 1133 (11th Cir. 2008) and *Florida Key Deer v. Stickney*, 864 F. Supp. 1222 (Dist. FL 1994) (Federal Emergency Management Agency violates ESA §§ 9 and 7 for its authorizing, regulating, and funding commercial development in habitat of ESA listed endangered deer species).

60.    The Defendants will continue their said ESA Section 9(a) prohibited taking of Endangered Species of Whales and Sea Turtles into the future unless ordered to stop by the Court.

COUNT III:    *Defendant Pentony's Violation of the Richard Maximus Strahan's Constitutionally protected rights to Free Speech, to Petition the Courts, to Equal Treatment under the law and to Due process by Its enforcing a Gag Order to coerce NOAA/NMFS employees to not communicate with the Plaintiff.* **FN19**

61.    The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 60.

62.    Defendant Pentony issued an order to all NOAA employees of its Greater Atlantic Regional Fisheries Area including the Northeast Fisheries Science Center to not communicate directly in any manner with the Plaintiff absent his personal authorization to do so. Pentony did this in retaliation for the Plaintiff's political activism to protect endangered wildlife from the adverse impact of commercial fishing. Pentony also did this as retribution for the Plaintiff's intent to commence the instant action in order to deter him from prevailing on his claims against the Defendants. Pentony issued the Gag Order to deliberately stop the Plaintiff from gathering information and facts needed to force the Defendants and their regulation of commercial fishing to comply with environmental law and to stop its killing and injuring of endangered marine wildlife and their marine ecosystem.

63.    In issuing his Gag Order, Pentony deliberately violated the Plaintiffs First Amendment protected right to core political speech, the Petition Clause of the First Amendment's protection of his right to petition government agencies and the courts, and his 14th Amendment constitutional right to due process and equal treatment under the law.

64.    Because of Pentony's Gag Order the Plaintiff has been irreparably injured and prevented from meaningfully prosecuting his claims against the Defendants. He has been prevented from meaningfully seeking any injunctive relief from the Court. He has been prevented from having the necessary facts available to him in order to prepare and file a meaningful amended complaint in the instant action. Many Endangered Whales and Sea Turtles have horribly died unnecessarily as a result. Pentony has unlawfully cost the Plaintiff much time and money as a result of his enforcing the Gag Order against him.

---

[19] See *Bivens v. Six Unknown Federal Agents*, 403 US 388, 91 SCT 1999 (1971)

65.     The Plaintiff has repeatedly attempted to communicate with NOAA employees in 2018-2019. They told him that they wanted to talk to him but were ordered by Pentony not to have any communication with the Plaintiff, including supplying him Publicly available NOAA documents or data. NOAA employee Colleen Coogan — coordinator of its ALWTRT —told him that she wanted to communicate with him but Pentony ordered her not to do so.

19 April 2021 Complaint in *Strahan v. Pentony, et al.*                                    24

## PRAYER FOR RELIEF

I.      For a Declaratory Judgment that that NOAA/NMFS are violating the ESA Section 9 take
        prohibitions by licensing and regulating Pot and Gill Net fisheries that are killing, injuring
        and otherwise taking Endangered Whales and Sea Turtles by entanglement of members of
        these endangered species in Vertical Buoy Ropes and netting.

II.     For a Declaratory Judgment that NOAA is now in continuous violation of its mandatory
        and non-discretionary duties under ESA Section 7 by transferring its supervisory authority
        under the ESA for Endangered Whales and Sea Turtles to NMFS absent an internal ESA
        Section 7 review to determine the adverse impact on endangered wildlife in doing the any
        such delegation, which infra-agency is best suited to protect listed species,  and whether
        such a delegation to any of its infra-agencies is even necessary.

III.    For an order, enjoining NMFS from further engaging in its Fishing Activity absent it being
        issued the requisite MMPA 101(a)(5)(E) incidental take permit and from its further
        attempting to manage the entanglements of ESA Listed Species of whales pursuant to any
        Take Reduction Team or the issuing of Take Reduction Regulations under MMPA Section
        118.

IV.     For an order, requiring Defendants NOAA and its ESA designee to enforce the ESA's
        Section 9 prohibitions against taking Endangered Whales and Sea Turtles against
        individual commercial fishermen and coastal state agencies, including requiring
        Massachusetts and Maine to obtain an ESA Section 10 ITP to stop NMFS from
        prosecuting them for their pot and gillnet fisheries prohibited entanglement and
        ogtherwise taking taking of ESA Listed Species. .

V.      For an award of $1,000,000 in compensatory damages against Defendant Pentony.

VI.     For an award of the M. A. X.'s direct costs of his prosecution against the Defendants.

VII.    For any further relief that the Court deems appropriate.

BY:

        /s/ Richard Maximus Strahan

        Richard Maximus Strahan as Man Against Xtinction
        83 Main Street, 6080 Granite Street Station
        Durham NH 03824
        esistoo@yahoo.com

        *Pro Se and Proud!*

## VERIFICATION OF THE COMPLAINT

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this 19th Day of April in the year 2021.

/s/ Richard Maximus Strahan

_____

Richard Maximus Strahan
Man Against Xtinction